## BENNETT v. THE STATE.

1. While delay in making complaint of an alleged assault with intent to rape and in instituting a prosecution for the same will ordinarily afford ground for discrediting the female as a witness and for attacking the bona fides of the prosecution, such delay may, in a given case, be so satisfactorily explained to the jury as to warrant them in returning a verdict of guilty.
2. The ground of the motion for a new trial based on newly discovered evidence was not insisted on in this court; there was sufficient evidence to support the verdict, and this court will not interfere with the discretion of the trial judge in refusing to set it aside.

Argued October 13, — Decided November 15, 1897.

Indictment for assault with intent to rape. Before Judge Falligant. Chatham superior court. March term, 1897.

*W. F. Slater*, for plaintiff in error.

*W. W. Osborne, solicitor-general,* contra.

LUMPKIN, P. J. The motion for a new trial in the present case is based on the general grounds, and upon newly discovered evidence. This last ground was abandoned in this court, and therefore the only question for decision is whether or not there was sufficient evidence to support the verdict. The charge was an assault with intent to commit a rape. Miss Jones, the alleged victim, testified positively and unequivocally that Bennett, the accused, in May, 1896, made a violent assault upon her, attempted to throw her down, exposed both his and her private parts, and endeavored to have carnal knowledge of her, forcibly and against her will. Accepting her testimony as the truth of the case, the guilt of the accused was proved beyond doubt.

It was insisted here, however, that Miss Jones was unworthy of belief, because, at the time of the commission of the alleged assault, she made no outcry, and afterwards treated Bennett with a degree of friendliness and familiarity utterly incompatible with the fact that he had attempted upon her so great a wrong; and it was further urged that the prosecution was too long delayed to have any foundation in truth or justice. The record does show that soon after the alleged attempt upon Miss Jones, she professed forgiveness of Bennett's act, subsequently visited his house in Savannah, and, in taking leave of him and

his wife, kissed him. Upon reaching her home in Burke county, she informed her mother of what had occurred, but no warrant was sworn out until September 18, 1896. Unquestionably, the circumstances last above recited and others shown to have occurred in this case would ordinarily tend most strongly to prove that the account given by Miss Jones as a witness of what had taken place between herself and the accused did not represent the real truth of the transaction, and would afford strong ground for the position that the prosecution was not instituted in good faith; but there were other circumstances which must be considered in this same connection. Bennett's wife was the aunt of the prosecutrix, and Bennett himself had always treated the latter as if she were his own niece. He had her affection, confidence and respect, and a felonious assault from him was probably one of the last things she would naturally have expected. A letter written by him, and introduced in evidence, proved beyond controversy that even if he did not attempt to ravish her, he certainly made improper advances to her on the occasion when the alleged assault with intent to rape took place. In the most favorable view of the matter, his conduct was grossly outrageous and utterly inexcusable. The undisputed evidence shows that she was, at the time, under his protection, and it is certain that she was overwhelmed and astounded by his attempt upon her chastity. He implored her forgiveness and begged her to remain silent as to what he had done. She so far kept her word as not to make any complaint against him while she remained in Savannah, and, in the presence of his wife, even went through the form of bidding him an affectionate farewell such as would be becoming on the part of a niece towards a beloved uncle. When she reached her home and told of Bennett's conduct, her mother became exceedingly indignant; and though no prosecution was immediately instituted, there was, apparently, from this time until the end no abandonment of an intention to bring him to justice. It further appears that the prosecution was, to some extent, delayed by sickness in the Jones family.

The case, at last, is purely one depending upon the evidence; and the jury, as was their right, gave credence to Miss Jones

42

as a witness. We can not, as matter of law, say they were not authorized to do so. They accepted as true her reasons for not making immediate complaint of Bennett's misconduct, for treating him as she did thereafter, and for delaying the prosecution. It was their sole and exclusive function to determine whether or not she was to be believed. They said by their verdict that they were satisfied beyond a reasonable doubt of the guilt of the accused, and their finding has received the sanction of the trial judge. This court, therefore, would be wholly unwarranted in interfering with his discretion in the case.

*Judgment affirmed. All the Justices concurring.*